**Leland H. BAUM and Mildred Baum, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 69–C–118.**

United States District Court, E. D. Wisconsin.

March 8, 1971.

Fred Hersh, Milwaukee, Wis., for plaintiffs.

Nestor Nicholas, Tax Refund Division, Washington, D. C., David Cannon, U. S. Atty., Milwaukee, Wis., for defendant.

OPINION

TEHAN, Chief Judge.

The plaintiffs in this action, Leland H. Baum and Mildred Baum, seek a refund of income taxes paid for the year 1966 as a result of the alleged erroneous disallowance of a deduction for (1) $30,000 paid by Leland H. Baum to retire an obligation from Glenport Realty Corporation to Earl Milliken, Inc. which Mr. Baum, an officer of Glenport, and his wife had guaranteed, and, (2) $1,150.00 legal fees and expenses incurred by Mr. Baum in resisting a challenge to his right to a discharge in bankruptcy. The $30,000 is allegedly fully deductible as a loss under § 165(c) (2), Title 26 U.S.C., and the $1,150.00 as a business expense made for the protection of Mr. Baum's right and ability to produce income. The defendant claims the $30,000 payment must be considered a non-business bad debt covered by § 166(d), Title

26 U.S.C. and that the legal fees and expenses are non-deductible personal expenses. Jurisdiction is not challenged, trial has been held, briefs have been filed and the court is prepared to render its decision.

In 1958, 1959 and 1960, Mr. Baum was in the real estate and construction business with interests in several corporations. In December, 1958, he and Alfred Hurwitz organized Glenport Realty Corporation, each making a capital contribution of $500.00. Their purpose in organizing Glenport was to subdivide land in Glendale and construct a total of 57 houses on that land and land in Fox Point. When Glenport was formed, he and Hurwitz conveyed to it the Glendale acreage to which they held title subject to a mortgage.[1] The property was subdivided into thirty lots.

The construction work on the Glendale property was contracted by Glenport to Earl Milliken, Inc. and by July of 1960 Glenport owed Milliken over $90,000 on unpaid bills for construction of houses. On July 1, 1960, it and the plaintiffs gave Milliken a note for the amount due. In 1961 Milliken took judgment on the note against all promissors in the amount of $77,455.76. In 1966, the judgment was satisfied and the promissors released in consideration of a payment by Mr. Baum to Milliken of $30,-000, Glenport having failed.

When Glenport was formed and when Mr. Baum signed the note to Milliken, it was anticipated that a $3000.00 per house profit would be realized, which would be equally divided between Mr. Baum and Mr. Hurwitz who each owned 50% of Glenport's stock.

In arguing that the $30,000 payment is deductible under § 165(c) (2), Mr. Baum has attempted the formidable task of distinguishing such cases as Putnam v. Commissioner of Internal Revenue, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956); Niblock v. C. I. R., 417 F.2d 1185 (7th Cir. 1969) and Stratmore v. United States, 420 F.2d 461 (3rd Cir. 1970) cert. den. 398 U.S. 951, 90 S.Ct. 1870, 26 L.Ed.2d 291, all of which held in similar circumstances that § 166(d) governed as to the nature of the deduction. He argues that (1) since he obtained a release of the obligation due Milliken for payment of less than the full amount, he is not subrogated to Milliken's rights under Wisconsin law and therefore does not hold a non-business debt which became worthless, and (2) the record establishes that he signed the note in order to protect his right to salary and not to protect any proprietary interest in Glenport.

In *Stratmore, supra,* the court stated with respect to the argument that a lack of subrogation when a partial payment was made by a guarantor to release the debt made the rule in *Putnam* and § 166(d) inapplicable:

"We are by no means certain that taxpayers' state law position is sound where, as here, the creditors' claims against the debtor had been totally extinguished by the approval of the Plan of Reorganization prior to the taxpayers' payment to the creditors. But we think that the essence of *Putnam* is the view of the Court of the Congressional purpose behind section 166(c) and the part it was intended to play in the statutory scheme for a common tax treatment of all losses suffered by a corporate stockholder in providing his corporation with financing: these losses are to be treated as capital losses. As the Court pointed out in *Putnam,* 'There is no real or economic difference between the loss of an investment made in the form of a direct loan to a corporation and one made indirectly in the form of a guaranteed bank loan. The tax consequences should in all reason be the same * * *.' 352 U.S. at 92–93, 77 S.Ct. at 180.

---

1. The amount of the equity if any of Mr. Baum and Mr. Hurwitz in the property at the time of its conveyance to Glenport has not been established.

It is not meaningful to emphasize unduly the common law principle of subrogation in analyzing the substantial realities upon which federal taxation is based. When the creditor turns to the guarantor for payment, the debt is already uncollectible. In both *Putnam* and the present case the claims against the debtors were at all relevant times no more collectible in the hands of the guarantors than in those of the original lender. To allow the tax result to turn on the presence or absence of this technical right of subrogation under state law would be to undermine the *Putnam* doctrine— taxpayers could change capital losses to ordinary losses almost at will. For example, every guarantor could obtain an ordinary loss simply by reaching an agreement with the creditor for payment of less than the full amount of the guarantor's liability, and thus avoiding any subrogation. We hold that taxpayers' payment pursuant to the guarantees was not a loss under section 165(c) (2) but rather a non-business bad debt under section 166(d)." (P. 465)

We agree that the fact of subrogation was not determinative in *Putnam* and that a lack of subrogation is not a significant distinction. Under *Putnam,* the payment gave rise to a bad debt deduction.

During the trial, Mr. Baum testified that his purpose in signing the note to Milliken was "to keep the ship from sinking, and I felt that if I didn't sign the note that Mr. Milliken would probably close the Company down and any chance that I'd have of making any kind of a salary out of it would be lost forever." He further testified that what he expected to earn was one-half of approximately $150,000 profit expected from the houses, the other one-half going to Hurwitz.

In our opinion, Mr. Baum's characterization of what he expected to receive from Glenport as "salary" does not reflect the true nature of the anticipated gain. The record reveals no payment of any salary to him and no agreement by Glenport to pay him any fixed amount. While it reveals that he performed considerable services for the corporation receiving nothing in return, his expectations were identical with those of Mr. Hurwitz whose services have not been detailed but whose stock holdings were equal to Mr. Baum's.

There is also no evidence in the record that Mr. Baum was threatened with discharge *by the corporation* if he failed to sign the note to Milliken. Indeed, Mr. Hurwitz, who was to share equally in the expected profits, refused to sign the note with no effect.

We are convinced that Mr. Baum's motive in signing the Milliken note was to enhance the value of his proprietary interest in Glenport, and not to protect his salary. § 166(d) therefore determines the nature of his deduction.

In his brief, counsel for the plaintiffs quotes § 162(a) as a basis for the right to deduct legal expenses incurred when Mr. Baum appealed an order denying him a discharge in bankruptcy. In our opinion the record does not establish that the legal expenses were other than personal expenses, not deductible under either § 162(a) or § 212, Title 26, U.S.C.

The foregoing Opinion shall stand as and for findings of fact and conclusions of law within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure.